## PEERS v. NEVADA POWER, LIGHT & WATER CO.

### (Circuit Court, D. Nevada. December 1, 1902.)

### No. 729.

**1. WRONGFUL DEATH—ACTION FOR DAMAGES—SUFFICIENCY OF COMPLAINT.**

The statute of Nevada (Cutting's Comp. Ann. Laws, §§ 3983, 3984) which creates a liability for wrongful death where the act, neglect, or default causing such death "is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof," and provides that the action shall be brought by the personal representative of the deceased, and how the proceeds recovered shall be distributed among certain kindred, and that "the jury in every such action may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the kindred as herein named," creates but a single cause of action, and not one in right of the deceased by survival, and another in right of the next of kin; and a complaint based thereon is not demurrable because it does not allege separately the damages resulting to the kindred or that any so resulted.

**2. SAME—EXEMPLARY DAMAGES.**

Nor is it necessary under such statute that the complaint should specify what portion, or whether any, of the damages prayed for are claimed as exemplary; the allowance of such damages, as well as damages resulting to the kindred, being a matter to be determined by the jury, in their discretion, from the evidence.

**3. SAME—NAMING BENEFICIARIES.**

The complaint in an action for wrongful death should state the names of the kindred of the deceased who are entitled to share in the recovery by the terms of the statute; but, where the names of kindred are so stated, it is not necessary to expressly negative the existence of relatives other than those named.

## At law. On demurrer to complaint.

The complaint in this action among other things avers:

That Frank A. Wells died intestate at Reno, Nev., March 1, 1902; that plaintiff is the duly appointed and qualified administrator of his estate; that at the time of his death, and for a long time immediately prior thereto, the defendant in a careless, reckless and negligent manner maintained across the premises described in said complaint "electric wires, and conducted electricity upon and through said wires across said street, and the said wires were at the said times and place of insufficient caliber, capacity, material, insulation, height above ground, attachment, support, and general construction to safely conduct the amount of electricity with which they were at said times and place surcharged and overburdened by defendant."

(11) That on the 1st day of March, 1902, defendant knew and had notice that said wires were of insufficient caliber, etc., as above mentioned. Notwithstanding such knowledge and notice, the "defendant recklessly, negligently, and in willful disregard of and indifference to the personal safety of public travelers over the said Ninth street, and the personal safety of the said Frank A. Wells, deceased, while a traveler, at said time and place maintained, surcharged, and overburdened the said wires with a highly dangerous amount of electricity."

(12) That while said wires were recklessly and negligently maintained by defendant "the said Frank A. Wells, deceased, while traveling afoot upon the said Ninth street, and without fault or negligence upon his part, came in con-

---

¶ 2. Punitive damages for wrongful death, see note to McGhee v. McGarley, 44 C. C. A. 259.

¶ 3. See Death, vol. 15, Cent. Dig. § 64.

tact with the said wires, and was by the electricity with which the same were recklessly and negligently surcharged and overburdened by defendant as aforesaid then and there killed."

(14) That said Wells died, leaving surviving him a mother, sister, and a brother, whose names and ages are stated in the complaint.

(15) That by reason of the premises hereinbefore mentioned and pleaded, plaintiff, as the administrator of the estate of Frank A. Wells, deceased, has sustained damage in the sum of $40,000.

To this complaint the defendant interposed a demurrer on several grounds; among others: (1) That the complaint does not state facts sufficient to constitute a cause of action. (2) That the 11th paragraph of the complaint is uncertain, in this: That it cannot be ascertained therefrom that the defendant knew or had notice of the matters therein set forth before the alleged injury. (3) That the tenth, eleventh, and twelfth paragraphs are uncertain, in that it does not appear therefrom whether the death of Wells was due "to the alleged careless, reckless, and negligent manner in which said wires were maintained across Ninth street, or to the amount of electricity with which they were surcharged and overburdened, or to the insufficient caliber, capacity, material, insulation, height above ground, attachment, support, or general construction of said wires." (4) That the complaint is uncertain, because it cannot be ascertained therefrom "whether said plaintiff seeks to recover pecuniary or exemplary damages, or both; nor does it appear therefrom the amount of each of said kinds of damages which he claims to have sustained." (5) That it does not appear therefrom whether Wells left surviving him a father or other relative than those mentioned in the complaint, or that said plaintiff has been damaged by any of the alleged wrongful acts of defendant." (6) That it does not appear therefrom that any pecuniary injury resulted to the plaintiff, or to any or all of the kindred of the said Wells." (7) That two causes of action—First, a cause of action which would have entitled the said Frank A. Wells to maintain an action in respect thereof; and second, a cause of action created by statute in favor of the kindred of said deceased—are improperly united in said complaint, and are not separately stated." (8) "That said complaint is uncertain, in that it cannot be ascertained therefrom what damages are claimed for the alleged cause of action which the said Frank A. Wells would have been entitled to maintain an action in respect thereof, and what damages are claimed in favor of the kindred of said Frank A. Wells, deceased."

Torreyson & Summerfield, for plaintiff.
A. E. Cheney (Van Ness & Redman, of counsel), for defendant.

HAWLEY, District Judge (orally). An action for the death of an intestate was unknown to the common law, and is of purely statutory origin. The unsatisfactory state of the common law, which denied any right to recover for death due to negligence or wrongful act, led to the passage of statutes giving a right of recovery in such cases. The English act of 1846 (9 & 10 Vict. c. 93), commonly designated as "Lord Campbell's Act," so often referred to, has served as a model upon which most of the statutes of the various states of the Union have been enacted. Statutes of this general character do not merely remove the operation of the maxim, "Actio personalis moritur cum persona," but give a new cause of action. The object of all statutes passed in conformity with the general purpose of the Lord Campbell act is to provide the means for recovering the damages caused by that which is in its nature a tort. The death of the party injured ceases to relieve the wrongdoer from liability for damages caused by the death. This is the main purpose and effect of all the statutes upon this subject. Stewart v. Railroad Co., 168 U. S. 445, 449, 18 Sup. Ct. 105, 42 L. Ed. 537. "For want of a common-

law remedy, statutes vesting in certain designated persons a right of action for injury resulting from death by negligence have been passed in different jurisdictions, and in the case of a death * * * the terms of the statute in force in the particular jurisdiction must be looked to in order to determine the right to sue, the form of action, the parties plaintiff and defendant, the conditions of liability, and the measure of damages." Patt. Ry. Acc. Law, § 350. It would, therefore, serve no useful purpose to review or refer to many of the cases cited by defendant, because most of them are based upon statutory provisions radically different from the act of this state requiring compensation for causing death by wrongful acts, neglect, or default, which reads as follows:

"Section 1. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the persons who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured; and although the death shall have been caused under such circumstances as amount in law to a felony.

"Sec. 2. The proceeds of any judgment obtained in any action brought under the provisions of this act shall not be liable for any debt of the deceased: provided, he or she shall have left a husband, wife, child, father, mother, brother, sister, or child or children of a deceased child; but shall be distributed as follows: First—If there be a surviving husband or wife, and no child, then to such husband or wife; if there be a surviving husband or wife, and a child or children, or grandchildren, then equally to each, the grandchild or children taking by right of representation; if there be no husband or wife, but a child or children or grandchild or children, then to such child or children and grandchild or children by right of representation; if there be no child or grandchild, then to a surviving brother or sister; or brothers or sisters, if there be any; if there be none of the kindred hereinbefore named, then the proceeds of such judgment shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons: provided, every such action shall be brought by and in the name of the personal representative or representatives of such deceased person; and provided further, the jury in every such action may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the kindred as herein named."

Cutting's Comp. Ann. Laws, §§ 3983, 3984.

This statute was construed by Judge Hillyer in Roach v. Mining Co. (C. C.) 7 Fed. 698. Without giving my approval to all the views expressed by him, it seems clear to my mind from the principles therein announced and the law applicable to the facts alleged that the general demurrer on the ground that the complaint does not state facts sufficient to constitute a cause of action should be overruled. I differ with Judge Hillyer in his construction of the act that "there are two causes of action,—two grounds upon which a recovery can be had,—one for the injury to the deceased, and one for the injury to the kindred named in the act." A careful reading of the entire act shows that there is but one cause of action, and this is given in section 1 (3983). The second section (3984) does not provide for another cause of action. It simply provides "how the proceeds of any judgment" obtained under section 1 shall be distributed, and, after declaring that "such action [that is, the action based upon the pro-

visions of the first section] shall be brought by and in the name of the personal representative or representatives of such deceased person," it then further provides that "the jury in every such action may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the kindred as herein named." This latter clause does not give another cause of action, but provides what proof may be given in the cause of action based upon the provisions of section 1. The first section creates the right of action, and the second section measures the recovery, and declares how the distribution must be made under the right created. There is but one cause of action stated in the complaint, to wit, a cause of action for the death of Frank A. Wells, caused by the alleged "wrongful act, neglect, or default" of the defendant.

The intention of the legislature must, of course, be given controlling effect; but in applying the ordinary and well-established canons of construction to be given to statutes it does not seem reasonable that the legislature intended to give two independent causes of action for the same injury, which causes of action would have to be separately stated in the complaint. This conclusion is supported by the reasoning of the court in Brown v. Railroad Co., 22 N. Y. 191, 194; Sweetland v. Railroad Co., 117 Mich. 329, 334, 75 N. W. 1066, 43 L. R. A. 568; In re Mayo's Estate, 60 S. C. 401, 411, 38 S. E. 634, 54 L. R. A. 660; Seward v. Vera Cruz, 10 App. Cas. 59, 70. This act is not a "survival act" in the strict sense of that term. It applies to cases of instantaneous death as well as to cases where the person injured survives the injury for a period of time. In this connection the law is well settled that in all cases where the death is instantaneous—where there is no appreciable length of time between the injury and the death—there cannot be any recovery for damages for the pain and suffering of the deceased. 8 Am. & Eng. Enc. Law, 866, 892. The statutes that have been passed upon this subject, while preserving the right of recovery, are by no means uniform, either as to the character, kind, or amount of damages, or by whom or for whose benefit they may be recovered. The evident intention of the legislature of this state, as appears from the language of the act itself, was to afford a complete and adequate remedy for the recovery in one action of all damages, whether compensatory or exemplary, which might result from the death of the deceased, and for the distribution of the damages recovered to the persons entitled to the same in the manner described in the second section of the act. In actions to recover damages for injuries received, the decided weight of the authorities is to the effect that it is not absolutely necessary, although it is held in several cases to be the better practice that plaintiff should set out in his complaint that he claims some or all of his damages to be punitive. It is sufficient if he makes a case by his pleading and proof upon the trial which will, under the law, entitle him to exemplary damages. Railway Co. v. Holland, 82 Ga. 257, 271, 10 S. E. 200, 14 Am. St. Rep. 158; Express Co. v. Brown, 67 Miss. 260, 265, 7 South. 318, 8 South. 425, 19 Am. St. Rep. 306; Wilkinson v. Searcy, 76 Ala. 176, 182; Rail-

road Co. v. Arnold, 84 Ala. 160, 169, 4 South. 359, 5 Am. St. Rep. 354; Hoadley v. Watson, 45 Vt. 289, 292, 12 Am. Rep. 197; Gustafson v. Wind, 62 Iowa, 281, 284, 17 N. W. 523; Davis v. Seeley, 91 Iowa, 583, 586, 60 N. W. 183, 51 Am. St. Rep. 356; Sloane v. Railway Co., 111 Cal. 668, 685, 44 Pac. 320, 32 L. R. A. 193; 1 Estee, Pl. § 1857; Suth. Dam. § 422.

In Gustafson v. Wind, supra, the court said:

"It is urged that no exemplary damages can be allowed, because the plaintiff demanded no such damages in her petition. We do not think such an allegation was necessary. Exemplary damages are not the subject of a claim in the sense that it is necessary to make averment thereof in the petition. The cause of action is founded upon injury to the person, property, and means of support. Where it is shown that damages have been suffered in any of these respects, it is in the discretion of the jury, in a proper case, to add to the verdict such a sum as they think proper as exemplary damages."

In Railway Co. v. Holland, supra, the court said:

"The point made that punitive damages could not be recovered because they were not claimed, 'eo nomine,' is wholly without merit. * * * It certainly cannot be necessary for the plaintiff to set out in his declaration, in so many words, that he claims some or all of his damages as punitive."

In Wilkinson v. Searcy, supra, the court said:

"Exemplary damages are not special damages which need be claimed in the complaint as a condition of their recovery."

In Hoadley v. Watson, supra, the court said:

"Exemplary damages grow entirely out of the nature of the act of the defendant for which the plaintiff recovers. They are given in enhancement, merely, of the ordinary damages, on account of the bad spirit and wrong intention of the defendant manifested by the act, and are recoverable with the ordinary damages, under the common allegation that the act declared for was done to the damage of the plaintiff."

The general rule as to the allowance of pecuniary or exemplary damages applicable to the present case is fairly and correctly stated in 8 Am. & Eng. Enc. Law, 924, as follows:

"Whether such damages are recoverable in an action for wrongfully causing the death of a person must depend upon the provision of the statute fixing the damages to be recovered. Where the statute expressly or by clear implication limits the damages recoverable to the pecuniary injury sustained by the beneficiaries by reason of the wrongful death, the damages must be compensatory merely, and nothing can be allowed as exemplary or punitive damages. When the statute does not so limit the recovery, it seems that such damages may be allowed where the proof shows that the death was due to the willful wrongdoing of the defendant, or to such gross negligence on his part as indicated a willful disregard of the rights of the deceased."

The objections urged against the fifteenth averment in the complaint that plaintiff, as administrator of the estate of Wells, "hath sustained damages," are untenable. They are purely technical, and apply only to the form, and not to the substance, of the averment. The death of Wells did not damage J. V. Peers individually, and there is no claim that it did. The action is not brought by him individually, but in his representative capacity as administrator of Wells' estate. Under the express provisions of the statute the action must be brought by the representative of the deceased, and he alone is en-

titled to recover damages, if any, resulting from the death of Wells by the wrongful act of the defendant,—not for his own individual benefit, but for the benefit of those to whom the damages recovered are to be distributed as provided for in the second section of the act. The averment in question follows approved forms in such cases (1 Estee, Pl. § 1841), and must be construed as having precisely the same meaning as if the words "hath sustained damages" had been left out, and in lieu thereof the words, "brings this action to recover from defendant $40,000 damages for the death of the deceased."

The manner in which the alleged negligence of defendant is stated in the complaint is sufficiently clear and certain. There are various causes or acts stated. Proof of either might be sufficient to enable plaintiff to sustain the averment of negligence. But defendant cannot complain because plaintiff saw fit to embrace other acts of the alleged negligence by the defendant. The eleventh paragraph of the complaint is not uncertain in so far as it alleges that "defendant knew and had notice" of the acts alleged to be negligent. It was unnecessary to allege when or how such notice was given. That is a matter of evidence which might be proven by direct notice, or be necessarily inferred from other facts established at the trial.

Is the averment in the fourteenth paragraph of the complaint, "that Wells left surviving him a mother, sister, and a brother," giving their names and ages, sufficient to authorize the legal inference that he did not leave "surviving him a father, or any other relative than those named in said complaint"? This question must be answered in the affirmative. It is true that, for aught that appears upon the face of the complaint, the intestate may have left other kindred than those named therein; but it is equally true that there is nothing on the face of the complaint to indicate that he left surviving any other kindred than those named therein. The averment as made must be taken as true upon demurrer, and necessarily implies that there were no other kindred. Non constat, if there had been, they would have been mentioned; and, if this is not true in fact, the plaintiff should ask leave to amend the complaint in this particular. I am of opinion that good pleading requires such an averment as will advise defendant of the names of all the surviving kindred who are by the terms of the statute entitled to a distribution of the damages that may be recovered in the action; but I am also of opinion that where, as here, the existence of such kindred as authorizes a recovery is positively stated in such a manner as to authorize a recovery for their benefit, it is not necessary that plaintiff should be required to negative the existence of relatives other than those named by him. In Barnes v. Ward, 67 E. C. L. 392, 398, it was argued by counsel that the declaration should have negatived the existence of any parent or other relative of the deceased than those named. Maule, J., interrupting, "Did it appear that there was any other person entitled"? and, upon receiving a negative reply, said, "I do not see how the defendant can be injured by the supposed omission."

The demurrer is overruled.