GREENE JACKSON TRIPP v. AMERICAN TOBACCO COMPANY ET AL.

(Filed 27 April, 1927.)

**1. Negligence—Punitive Damages.**

In order to award punitive damages in a civil action for a personal injury inflicted on the plaintiff, it must be made to appear by the evidence that the act complained of was maliciously done, in addition to the negligence upon which compensatory damages may be given by the jury, or in disregard to the criminal law, or aggravated by the indifference of the defendant to the safety of the plaintiff under the circumstances wherein the negligent act had been committed.

**2. Same—Questions of Law.**

The question as to whether there is any evidence sufficient to entitle the plaintiff to recover punitive damages of the defendant under the facts of a particular case, wherein compensatory damages are recoverable for the defendant's negligent act in the infliction of a personal injury, is one of law for the judge to decide.

**3. Same—Verdict—Appeal and Error.**

Where the nightwatchman of a corporation, within the scope of his duties, shoots one apparently a trespasser on the defendant's premises at night for an unlawful purpose, and all the evidence tends to show that the watchman did so by a reasonable mistake on his part, the facts are insufficient to submit an issue as to punitive damages to the jury, and the verdict awarding them will be stricken out on appeal.

APPEAL by defendants from *Cranmer, J.*, at January Term, 1927, of PITT.

Civil action for damages, tried upon the following issues:

"1. Was the plaintiff wrongfully and unlawfully assaulted by the defendant, W. H. Turner, as alleged in the complaint? Answer: Yes.

"2. If so, was the defendant, Turner, at the time of said assault, acting within the scope of his employment as nightwatchman of the defendant, American Tobacco Company? Answer: Yes.

"3. What compensatory damages, if any, is the plaintiff entitled to recover? Answer: $5,000.

"4. What punitive damages, if any, is plaintiff entitled to recover? Answer: $5,000."

The facts are that W. H. Turner was nightwatchman and special officer employed to guard the tobacco warehouse and premises of the American Tobacco Company in the city of Greenville, N. C.; that on the night of 17 September, 1925, the plaintiff, while walking along the edge of the premises of the American Tobacco Company, near a railroad switch, was shot by the said Turner and seriously injured. The plaintiff testified that as he was coming from behind the warehouse, it being between twilight and dark, some one (Turner) called to him and said: "Who is that?" to which he replied, "Oh, it is me. What do you want?" Not paying any attention to the man, plaintiff continued in his approach toward the street, and when he got within about ten feet of the man, Turner said, "Stop, Stop!" and the second time he said "Stop" he shot, the bullet striking plaintiff in the right chest. Plaintiff braced himself up against the building and continued toward the street. As he went by Turner he said, "You have shot me; maybe I'll die." Whereupon Turner said, "Lord have mercy; I didn't know who you were."

The defendant, W. H. Turner, testified that he did not know who Tripp was at the time he shot him, but thought he was a pillager and a trespasser, it being quite dark at the time, and that on account of plaintiff's refusal to stop when repeatedly commanded to do so, together with the harshness of his reply, and his quickened step, he (Turner) perceived it to be necessary to shoot to protect himself. As soon as the defendant discovered who the plaintiff was, he immediately exclaimed, "Lord, have mercy; why didn't you tell me who you were?"

From a judgment on the verdict in favor of plaintiff the defendants appeal, assigning errors.

*J. C. Lanier and Albion Dunn for plaintiff.*
*Skinner, Cooper & Whedbee and F. G. James & Son for defendant, Tobacco Company.*
*S. J. Everett for defendant, Turner.*

STACY, C. J. The chief exception presented by the record is the one which challenges the sufficiency of the evidence to warrant an award of punitive damages. The liability of the corporate defendant for punitive, as well as compensatory damages, in case the tort committed by the defendant, Turner, in the course of his employment was wilfully, wantonly and maliciously inflicted, is not seriously questioned. *May v. Tel. Co.,* 157 N. C., 416; *Stewart v. Lumber Co.,* 146 N. C., 47; *Hayes v. R. R.,* 141 N. C., 195; *Jackson v. Tel. Co.,* 139 N. C., 347; *Durham v.*

*R. R.,* 108 N. C., 399; *Louis Pizitz Dry Goods Co. v. Yeldell,* 71 L. Ed., ........, decided 11 April, 1927; note, 48 L. R. A. (N. S.), 38. But the defendants stressfully contend that, on the evidence adduced in this case, only the issue of compensatory damages should have been submitted to the jury. A careful perusal of the record, viewed in the light of the pertinent authorities on the subject, leads us to the same conclusion. *Swain v. Oakey,* 190 N. C., 113; *Webb v. Tel. Co.,* 167 N. C., 483; *Cottle v. Johnson,* 179 N. C., 426; *Meeder v. R. R.,* 173 N. C., 57; *Hodges v. Hall,* 172 N. C., 29; *Ammons v. R. R.,* 140 N. C., 196; *Hansley v. R. R.,* 117 N. C., 565; *S. c.,* 115 N. C., 602; *Holmes v. R. R.,* 94 N. C., 318; *Causee v. Anders,* 20 N. C., 388; 8 R. C. L., 585 *et seq.;* 1 Sedgwick on Damages (9th), 686.

The following rule was adopted in *Holmes v. R. R.,* 94 N. C., 318, *Ashe, J.,* delivering the opinion of the Court: "Punitive damages are never awarded except in cases 'when there is an element either of fraud, malice, such a degree of negligence as indicates a reckless indifference to consequences, oppression,. insult, rudeness, caprice, wilfulness, or other causes of aggravation in the act or omission causing the injury.' Thompson, Carrier of Passengers, 575; and to the same effect is 3 Southerland Damages, 270."

In *Day v. Woodworth,* 54 U. S., 363, the Supreme Court of the United States recognized the power of the jury, in certain tort actions, to assess punitive or exemplary damages, when circumstances warranting their imposition are properly made to appear. *Mr. Justice Grier,* delivering the opinion of the Court in that case, said:

"It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindicative damages upon a defendant, having in view the enormity of his offense rather than the measure of compensation to the plaintiff. We are aware that the propriety of this doctrine has been questioned by some writers, but if repeated judicial decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument. By the common, as well as the statute law, men are often punished for aggravated misconduct or lawless acts, by means of civil action, and the damages, inflicted by way of penalty or punishment, given to the party injured. In many civil actions, such as libel, slander, seduction, etc., the wrong done to the plaintiff is incapable of being measured by a money standard, and the damages assessed depend on the circumstances, showing the degree of moral turpitude or atrocity of the defendant's conduct, and may properly be termed exemplary or vindictive rather than compensatory. In actions of trespass, where the injury has been wanton and malicious, or gross and outrageous, courts permit

juries to add to the measured compensation of the plaintiff which he would have been entitled to recover, had the injury been inflicted without design or intention, something farther by way of punishment or example, which has sometimes been called 'smart money.' This has been always left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case."

Again, in *R. R. v. Quigley,* 62 U. S., 202, *Mr. Justice Campbell,* speaking for the Court, said: "Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations."

And in *R. R. v. Arms,* 91 U. S., 489, *Mr. Justice Davis,* delivering the opinion of the Court, said: "Redress commensurate to such injuries should be afforded. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful act of the defendant, and its consequences to the plaintiff; but they are not at liberty to go farther, unless it was done wilfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them. In that case the jury are authorized, for the sake of public example, to give such additional damages as the circumstances require. The tort is aggravated by the evil motive, and on this rests the rule of exemplary damages."

See, also, valuable opinion of *Sanborn, Circuit Judge,* in *Times Pub. Co. v. Carlisle,* 94 Fed., 762, and 1. Sedgwick on Damages (9th), 686, for the origin and history of the rule respecting exemplary damages.

There is a marked distinction between responsibility for an injury and liability for assessment of punitive damages. *Swain v. Oakey,* 190 N. C., 113; *Stanford v. Grocery Co.,* 143 N. C., 419.

Punitive, vindictive or exemplary damages, sometimes called smart money, are allowed in cases where the injury is inflicted in a malicious, wanton and reckless manner. The defendant's conduct must have been actually malicious or wanton, displaying a spirit of mischief towards the plaintiff, or of reckless and criminal indifference to his rights. *Carmichael v. Tel. Co.,* 157 N. C., 21; *S. c.,* 162 N. C., 333; *Brown v. Electric Co.,* 138 N. C., 533; *Mosseller v. Deaver,* 106 N. C., 494; *Reeves v. Winn,* 97 N. C., 246; *Anderson v. Harvester Co.,* 104 Minn., 49, 16 L. R. A. (N. S.), 440, and note. Where these elements are present, damages commensurate with the injury may be allowed by

way of punishment to the defendant. *Knowles v. R. R.,* 102 N. C., 59; *Bowden v. Bailes,* 101 N. C., 612; *Johnson v. Allen,* 100 N. C., 131; 8 R. C. L., 606. In this jurisdiction such damages are awarded on the ground of public policy, for example's sake, and not because the plaintiff has a right to the money, but it goes to him merely because it is assessed in his suit. *Stanford v. Grocery Co.,* 143 N. C., 419. In proper cases, both the awarding of punitive damages and the amount to be allowed, if any, rest in the sound discretion of the jury. *Cobb v. R. R.,* 175 N. C., 132; *Fields v. Bynum,* 156 N. C., 413; *Hayes v. R. R.,* 141 N. C., 199; *Smithwick v. Ward,* 52 N. C., 64. However, the amount of punitive damages, while resting in the sound discretion of the jury, may not be excessively disproportionate to the circumstances of contumely and indignity present in each particular case. *Ford v. McAnally,* 182 N. C., 419; *Gilreath v. Allen,* 32 N. C., 67; *Sloan v. Edwards,* 61 Md., 100; 8 R. C. L., 606. "Compensatory damages are based upon injuries suffered by the plaintiff, while punitive damages are awarded upon wrongs intended by the defendant." *Cotton v. Fisheries Co.,* 181 N. C., 151.

Whether there is any evidence, in a given case, sufficient to justify the assessment of punitive damages, is a question of law for the court, and if, as here, none has been offered, it is error to submit the question to the jury. *Waters v. Lumber Co.,* 115 N. C., 649; *Holmes v. R. R.,* 94 N. C., 318.

The remaining exceptions present no new question of law, or one not heretofore settled by our decisions. We have carefully examined them all and are of opinion that they should be resolved in favor of the validity of the trial.

It follows, from what is said above, that the fourth issue should be disregarded and stricken out, and judgment entered for the plaintiff upon the remaining issues, including the costs incurred in both the trial court and the appellate court.

Modified and affirmed.