LANDIS H. WELSH AND WIFE, MARGARET W. WELSH v. LEON M. TODD
AND WIFE, MITTIE J. TODD.

(Filed 20 November 1963.)

## 1. Nuisance § 1—

A fence which is of no beneficial use to the owner and which is erected
and maintained by him solely for the purpose of annoying a neighbor is a
spite fence and may be abated subject to the same equitable principles
which govern injunctive relief generally.

## 2. Same— Whether fence was spite fence held question for jury on evidence in this case.

Evidence that defendants erected on their land a windbreak fence some
four feet high along that portion of that side of their lot which did not
adjoin plaintiffs' lot and that the fence was some seven and one-half feet
high adjacent to plaintiffs' land, that the fence damaged plaintiffs' lot by
interfering with the view and breeze, with evidence of animosity on the
part of defendants, and that the additional height along plaintiffs' property
served no useful purpose but was solely from a vengeful and malic-
ious motive, *is held* to take the case to the jury on the crucial question of
whether the fence in fact served any purpose beneficial to defendants in
the legitimate use and enjoyment of their property or whether defendants
in good faith reasonably believed it did so.

APPEAL by plaintiffs from *Parker, J.,* May 1963 Session of NEW
HANOVER.

Action to abate an alleged "spite fence" and to recover damages for
its erection and maintenance. Plaintiffs offered evidence tending to
show the following facts:

Plaintiffs Welsh and defendants Todd own adjoining water front
lots in the Ocean View Subdivision on Middle Sound in New Hanover
County. The Welsh lot is fifty feet wide and runs southeasterly from
Trinity Avenue to the center line of the Intracoastal Canal. Plaintiffs'
northern line is contiguous to defendants' southern boundary, but the
Todd lot extends northwesterly one hundred and four feet beyond the
rear of plaintiffs' lot. The Todd house was erected sometime before
plaintiffs built theirs in June 1960. Plaintiffs' house is situated about
five feet from their north property line. Defendants' front porch is
forty or fifty feet to the rear of plaintiffs' back porch which is approxi-
mately thirty feet from the plaintiffs' western boundary. The Welsh
front porch is about eighteen feet from a steep bluff in the eastern line
of the property. The Sound is a short distance from the bluff and the
Inland Waterway courses generally north and south approximately
one hundred feet out in the Sound.

In April 1962 the defendants erected a web fence along their south-
ern boundary. This type fence is commonly used as a windbreak. It

consists of small concrete posts and interwoven boards of western cedar. From the western end of defendants' lot to the western end of plaintiffs' property the fence is only four feet high; from the western end of plaintiffs' lot to the bluff, a distance of one hundred and nineteen feet, the fence is seven and a half feet high.

Plaintiffs' house obstructs the defendants' view of the Sound from their front porch to the south and east. The defendants' fence interrupts plaintiffs' view of the Inland Waterway to the north for over a mile. It also interferes with their view of the Sound to the northeast and cuts off the breeze from the north and northeast. Directly in front of their house, from the end of the fence, plaintiffs still have an open view across the Sound. In the opinion of an expert realtor, the erection of the fence has depreciated the value of plaintiffs' property four thousand dollars.

During the construction of the fence Mr. Welsh complained to Mr. Todd that the fence was blocking his view. Mr. Todd's reply was, "You blocked my view and I am going to block yours." On another occasion Mr. Welsh asked him why he did not add a "couple more boards" to the height of the fence. Todd replied that he thought he had the fence high enough to serve his purpose. Before the defendants erected the fence plaintiffs had installed a flood light at the rear of their house on the end farthest from the Todd property. Between the light and the Todd house there is a ten-foot wide cedar and a large shrub. Welsh denied that it was aimed at the defendants' house or that it was kept burning all of the time.

At the close of plaintiffs' evidence, defendants' motion for judgment of nonsuit was allowed and plaintiffs appealed.

*J. C. Wessell, Jr. and Carr & Swails for plaintiff appellants.*
*William K. Rhodes, Jr., for defendant appellees.*

SHARP, J. Since the decision in *Barger v. Barringer,* 151 N.C. 433, 66 S.E. 439, it has been established law in this State that a spite fence is a private nuisance. A spite fence is one which is of no beneficial use to the owner and which is erected and maintained solely for the purpose of annoying a neighbor. It may be abated, subject to the same equitable principles which govern injunctive relief generally, and damages recovered if any have been sustained. *Burris v. Creech,* 220 N.C. 302, 17 S.E. 2d 123; 22 Am. Jur., *Fences,* §§ 43, 46; Annot., Spite Fences, 133 A.L.R. 691, 720.

Plaintiffs' evidence, viewed in the light most favorable to them, permits the inference that the fence, constructed to a height of seven

and a half feet along the property line, serves no useful purpose and that defendants erected it solely to satisfy a vengeful and malicious motive to injure plaintiffs. Therefore, the motion for nonsuit was improvidently granted. Whether the fence does in fact serve any purpose beneficial to the defendants in the legitimate use and enjoyment of their property or whether defendants erected it in good faith reasonably believing that it would perform a useful function are questions for the jury.

Courts have denied equitable relief where the walls and fences complained of screened a defendant's premises from objectionable noises, odors, and unseemly conduct on the plaintiff's property. *Stroup v. Rauschelbach*, 217 Mo. App. 236, 261 S.W. 346; *Daniel v. Birmingham Dental Mfg. Co.*, 207 Ala. 659, 93 So. 652; *D'Inzillo v. Basile*, 40 N.Y.S. 2d 293.

On cross-examination, Mr. Welsh testified that he had erected a flood light on the rear of his house. However, the answer contains no allegation that defendants constructed the fence to shield their premises from such a light or from any objectional conduct whatever on the part of the plaintiffs. Defendants merely admit the erection of the fence and stand upon their rights as property owners to maintain it. A jury must determine whether this fence comes within the protection of those rights.

The judgment of nonsuit is
Reversed.